UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

GREGORIO MONTES RAMIREZ,                                                    Petitioner,

v.                                                         Civil Action No. 4:25-cv-143-RGJ

MIKE LEWIS, Jailer, Hopkins County Jail;
SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and Customs
Enforcement;
TODD M. LYONS, Acting Director, U.S. Immigration
and Customs Enforcement;
KRISTI NOEM, Secretary, U.S.
Department of Homeland Security;
PAMELA BONDI, Attorney General of the United States
                                                                          Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Gregorio Montes Ramirez's Writ of Habeas
Corpus. [DE 1]. Respondents responded on November 10, 2025. [DE 10]. Petitioner replied on
November 21, 2025. [DE 13]. Petitioner has also filed a motion for a temporary restraining order.
[DE 3]. On November 25, the Court held a show cause hearing. [DE 7]. This matter is ripe for
adjudication. For the reasons below, the Court **GRANTS** Ramirez's Petition for a Writ of Habeas
Corpus [DE 1] and **MOOTS** the motion for a temporary restraining order. [DE 3].

**I.    Background**

Petitioner Gregorio Montes Ramirez, ("Ramirez") is a native and citizen of Mexico. [DE
1 at 4]. Ramirez has been present in the United States since 2005 when he entered without
inspection or admission into the United States. [*Id.*]. Ramirez has primary physical custody of his
three U.S. Citizen children, ages 18, 10, and 7. [*Id.*]. Ramirez retains a valid work permit issued
by the Department of Homeland Security ("DHS"). [*Id.* at 2]. It is currently valid from November
10, 2025, through November 9, 2027. [DE 14 at 171].

In February 2025, Ramirez submitted a VAWA self-petition as an abused spouse of a U.S. Citizen and an adjustment of status with USCIS.[1] [*Id.* at 5]. Although his adjustment of status is pending, [DE 1-1 at 21] his VAWA self-petition has been approved. [DE 14 at 170]. To be approved for a VAWA self-petition, one must have "good moral character." 8 U.S.C. § 1154 (a)(vii)(II); 8 C.F.R. 204.2(c)(1)(i)(F).

On August 9, 2025, Ramirez was arrested by Indianapolis Police after a traffic stop for "Operating [sic] Vehicle while Intoxicated Endangering a Person". [DE 10 at 135]. Two days later, he was "turned over" to Immigration and Customs Enforcement ("ICE") by the Indianapolis Police Department pursuant to an immigration detainer[2] lodged with the Marion County Sheriff's Department. [*Id.*]. After his transfer to ICE, he was served with a form I-200, a "Warrant for Arrest of Alien" citing authority under Immigration and Nationality Act ("INA") 236 and 287. [DE 1- 1 at 97]. Section 236 of the INA is codified at 8 U.S.C. § 1226 ("Section 1226"). To then initiate removal proceedings, ICE placed Ramirez into removal proceedings pursuant to 8 U.S.C. § 1229a. [DE 1 at 5].

DHS denied Ramirez's request to be released on bond. [*Id.* at 6]. However pursuant to Section 1226, noncitizens have a right to a custody determination reviewed by an Immigration Judge ("IJ"). *See* 8 U.S.C. § 1226; 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Also known as a bond hearing.

---

[1] The Petition states that Ramirez's ex-wife, a U.S. Citizen, has a domestic violence conviction against him. [DE 1 at 4]. But the purpose of a VAWA self-petition is for "aliens who have been abused by their U.S. Citizen [spouse]. . . the ability to independently petition for themselves. . . without the abuser's knowledge, consent or participation." U.S. CITIZENSHIP & IMMIGR. SERVS., *Abused Spouses, Children,* & Parents (Jan. 24, 2025) https://www.uscis.gov/humanitarian/abused-spouses-children-and-parents; 8 C.F.R. 204.2(c) (stating that a requirement for approval of a VAWA self-petition includes that the petitioner has been "battered, or has been the subject of extreme cruelty perpetrated by" the U.S. Citizen.) It is noteworthy that Ramirez's spouse also has a conviction for "false reporting against [Ramirez]" which is included in Ramirez's VAWA self-petition. [DE 1-1 at 21].

[2] "An immigration detainer notifies a state or locality that ICE intends to take custody of a removable alien when the alien is released from that jurisdiction's custody. ICE issues the detainer to request that the state or locality to cooperate by notifying ICE of the alien's release date and by holding the alien for up to 48 hours—which is based on ICE's determination that [ ] it has probable cause that the alien is removable." *Lopez-Lopez v. Cnty of Allegan,* 321 F. Supp. 794, 797 (E.D. Mich. 2018) (citing 8 C.F.R. § 287.7(a), (d)).

Upon a request by Ramirez for an IJ to review this determination, on September 25, 2025, an IJ denied Ramirez's request for bond stating that he lacked jurisdiction to grant bond pursuant to Board of Immigration Appeals decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. [*Id.* at 6]. This is a reversal of ICE's longstanding policy. [*Id.*].

Ramirez asserts that the United States illegally detained him under Section 1225 instead of Section 1226 in violation of the INA. [*Id.* at 8]. And that this detention is in violation of his Due Process Rights under the Fifth Amendment. [*Id.* at 9]. Therefore, Ramirez seeks release from his detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether he should remain in custody. [*Id.* at 11].

In response, the United States makes three contentions. First, this Court has no jurisdiction to review the Habeas challenge. [DE 10 at 136]. Second, Ramirez is properly detained pursuant to Section 1225(b)(2), not Section 1226. [DE 10 at 141]. And third, even if Ramirez is detained pursuant to Section 1226, Ramirez cannot be released *prior* to a custody redetermination hearing. [DE 10 at 152].

## II.    Jurisdiction

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The limits of this Court's jurisdiction are "not to be expanded by judicial decree." *Id.* A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Although the Court "may not review discretionary decisions made

by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The United States claims that § 1252(b)(9) requires the Court to answer questions "arising from any action taken or proceeding brought to remove" Ramirez. [DE 10 at 136 (quoting 8 U.S.C. § 1252(b)(9))].[3] Ramirez reiterates that he is not challenging his removal proceedings, but instead is solely "challenging his unlawful detention." [DE 13 at 91-92].

In *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)).[4] Here, Ramirez's petition for habeas challenges his detention, not the removal or discretionary acts of the Attorney General. [DE 13 at 165]. Ramirez seeks release from an unlawful detention, not any judgment on the removal itself. [*Id.*]. Because he challenges the statutory and constitutional validity of his continued detention, § 1252(b)(9) does not bar jurisdiction and review of Ramirez's petition is appropriate.

---

[3] Despite numerous decisions to the contrary in this District and across the country, the United States continues to assert that this Court does not have jurisdiction under 8 U.S.C. § 1252(b)(9). The Court has located no decision to the contrary and the United States cites none. The Court has previously cited numerous decisions from around the country finding jurisdiction proper. *See Edahi v. Lewis, et al.* No. 4:25-CV-129-RGJ, 2025 WL 3466682, at *3 (W.D. Ky. Nov. 27, 2025).

[4] Although the United States does not argue that Section 1252(g) bars jurisdiction, the Supreme Court has rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999). "A claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[ ] relate[s] to that discretionary, prosecutorial decision.'" *Alonso v. Tindall*, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

### III.    Exhaustion of Remedies

Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district court within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

### IV.    DISCUSSION

#### A.  Section 1225 vs. Section 1226

The United States argues Section 1225 applies to Ramirez's detention, not Section 1226.

#### 1.    The Statutory Language.

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers;[5] expedited removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

> **(b) Inspection of applicants for admission**
> **(2) Inspection of other aliens**
>
> > **(A) In general**
> > Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). For purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

---

[5] Immigration Officers are defined as "any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this chapter or any section of this title." 8 U.S.C. § 1101(a)(18). "Inspection" is not defined by statute but U.S. Customs and Border Patrol states, "[t]he inspection process includes all work performed in connection with the entry of aliens and United States citizens into the United States, including pre-inspection performed by the Immigration Inspectors outside the United States." U.S. CUSTOMS & BORDER PATROL, *Immigration Inspection Program*, (Mar. 6, 2024) https://www.cbp.gov/border-security/ports-entry/overview.

The second provision, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens" states:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> > (1) May continue to detain the arrested alien; and
> > (2) May release the alien on—
> > > (A) Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).

Under Section 1225(a)(1) "applicants for admission," are noncitizens "present in the United States who [have] not been admitted." Section 1225(a)(1). Under subsection (b), certain 'applicants for admission' may be subject to removal proceedings. *Dep't of Homeland Sec. v. Thuraissigam*, 591 U.S. 103, 108-09 (2020). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225, with limited exception, has a mandatory detention provision. Section 1225(b)(2)("if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a . . .") (emphasis added). Noncitizens detained under Section 1225(b)(2) may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226 authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2019). Section 1226(a) creates a discretionary framework for noncitizens arrested and detained upon an arrest "warrant issued by the Attorney General." Section 1226(a). The Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may

release the alien" on parole. *Id.* The arresting immigration officer makes an initial custody determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). However, noncitizens can appeal that determination in a bond hearing before an IJ. *Id.*

Congress recently amended Section 1226(c). Through the Laken Riley Act, Congress added two new mandatory provisions to the general discretionary framework of Section 1226. Now, as codified in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).

To summarize, if detained under Section 1225(b)(2)(A), the noncitizen must remain in custody for the duration of their removal proceedings, but if detained under Section 1226, the noncitizen is entitled to a bond hearing before an IJ. *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1247 (W.D. Wash. 2025). Section 1225 essentially "supplement[s]" Section 1226. *Rodriguez Disa v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

2.    <u>Statutory Application to Ramirez.</u>[6]

As an initial matter, the detention papers and arrest warrant both state that Ramirez was detained and arrested pursuant to Section 1226. [DE 1 at 5]. This requires a bond hearing. When Ramirez appeared for a bond redetermination, after DHS denied his initial release on bond, the IJ stated that he lacked jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). [DE 1 at 6; DE 1-1 at 17; DE 10 at 135].

Regardless, the United States contends that Ramirez is not only an applicant for admission but is also "seeking admission" pursuant to Section 1225(b)(2)(A) and therefore is subject to the mandatory detention provision of Section 1225(b)(2)(A). [DE 10 at 142]. The question before the Court is whether "an alien present in the United States who has not been admitted" includes someone like Ramirez, who is not presently seeking admission but has been in the United States for approximately twenty years without inspection or authorization, and who also retains a valid DHS work permit, and an approved VAWA self-petition. In other words, the Court must decide whether Ramirez, who may be an "applicant for admission" and who was detained pursuant to an arrest warrant, is also "seeking admission" pursuant to Section 1225(b)(2)(A). The United States contends he is. [DE 10 at 142]. If so, he would be placed in mandatory detention under Section 1225(b)(2)(A) and his habeas petition would be denied. *Id.* If not, then he was "arrested and detained pending a decision on whether [he] is to be removed from the United States" pursuant to Section 1226(a). Ramirez contends that Section 1226 should control. [DE 13 at 165]. He further

---

[6] Recently, the Central District of California granted class certification to the "Bond Eligible Class" described as "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista et al., v. Santacruz,* 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). But this does not dictate the Court's opinion. The *Bautista* court set a status conference for January 16, 2025, and a joint status report for January 9, 2025 "which shall include how the parties will proceed with this matter. *Id.* at *10. For now, this Court continues to review each petition individually.

contends that because Section 1226 controls, his Fifth Amendment due process rights have been violated and he should be entitled to the full due process under the law. [*Id.* at 165-66]; *Maldanado v. Baker,* 2025 WL 2968042, at *9-10 (D. Md. Oct. 21, 2025).

When interpreting statues, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotes omitted). However, ambiguity is not determined by examining provisions in isolation. *Rodriguez v. Noem*, No. 1:25-CV-1196, 2025 WL 3022212, at *5 (W.D. Mich. Oct. 29, 2025). "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400.

"It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walke*, 533 U.S. 167, 174 (2001)). "[E]very clause and word . . . should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). This includes titles and section headings. *See Dubin v. United States*, 599 U.S. 110, 120-21 (2023). "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring).

*i. The Title and Statutory Scheme.*

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The added word of "arriving" supports the notion that the statute governs "arriving" noncitizens, not those present already. This is further reinforced by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2)(B)(i)-(iii) ("who is a crewman. . . who is a stowaway.") This limited, and more specific methods of entry suggest that Section of 1225(b)(2) is limited to noncitizens arriving at a border or port, being inspected by an immigration officer, and are *presently* "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin*, 599 U.S. at 118 (2023)). This reinforces the interpretation that Section 1225(b)(2) is more limited in scope than the United States asserts. *Id.* Further, Section 1225's implementing regulation found in 8 C.F.R. § 235 is titled "Inspection of Persons Applying for Admission" and the language in the first part, 8 C.F.R. § 235.1 states that "[a]pplication to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection . . ." This language also supports Section 1225 being about the inspection process upon arrival for individuals presenting themselves for examination before an immigration officer.

Moreover, the title is divided into sections which are separated by semicolons. The first phrase is "inspection by immigration officer." The part of the heading specifying "expedited removal" specifically includes the words "arriving aliens." Ramirez has been in the country for twenty years and is neither arriving, nor was he inspected upon arrival. For all these reasons, the text of the title indicates that § 1225 governs "arriving" noncitizens, while § 1226 focuses on the apprehension and detention of those noncitizens already in the country.

The statutory scheme provides context, too. In *Jennings*, the Supreme Court stated that Section 1226 is the "default rule" and "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 288; 301. The inclusion of a "default" right after a more limited and narrow statute is "likely no coincidence." *Pizarro Reyes*, 2025 WL 2609425, at *5. It is "consonant with the core logic of our immigration system" that different statutory schemes would apply to non-citizens arriving at the border compared to non-citizens already within the country. *Martinez v. Hyde,* 792 F. Supp. 3d 211, 222 (D. Mass 2025).

The statutory scheme regarding arrest warrants provides clarity, too. Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested" pending removal. Section 1226's implementing regulations further expand on this topic. 8 C.F.R. § 236.1 is titled "Apprehension, custody, and detention" and specifically § 236.1 is subtitled "Warrant of Arrest." It states that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). This is contrast to Section 1225 and its implementing regulations, 8 C.F.R. § 235.  Under Section 1225, noncitizens are not arrested pursuant to a warrant. They are detained upon arrival and are not permitted to enter the United States. This detention is a statutory function of the inspection process and not an arrest pursuant to administrative warrant.  This is contrast to Section 1226 which focuses on individuals *already* in the United States who are found to be removable and a I-200 administrative warrant is issued for their arrest. This again supports the overall notion that different statutory schemes would apply to different groups of non-citizens. *Martinez,* 792 F. Supp. 3d at 222. Thus, Section 1225 is for individuals "seeking admission" at the border and do not need to be arrested. Section 1226 is for noncitizens already present in the United States.

Also, the Laken Riley Act recently amended Section 1226. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.,* 514 U.S. 386, 397 (1995). The Laken Riley Act added new mandatory detention provisions to an otherwise discretionary statute. Now, in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii). Even if the sections are not mutually exclusive, and Section 1225(b)(2)(A) governs certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary. That's "because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizzaro Reyes,* 2025 WL 2609425, at *5 (quoting Section 1225(b)(2)(A)). And further, "[courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022). Reading the statutes otherwise would result in "two separate clauses" performing the "same work." "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes,* 2025 WL 2609425, at *5.

In sum, based upon the statutory context and relationship between Section 1225 and Section 1226, the statutory scheme, and most importantly the text, the court finds it difficult to read a noncitizen who is "seeking admission" when the individual never attempted to "seek" admission pursuant to Section 1225(b)(2)(A). This is true, even if the noncitizen may be an "applicant for admission" pursuant to Section 1225(a)(1). That has no bearing on whether he is seeking admission under Section 1225(b)(2)(A). *See, e.g., Del Villar v.,* 2025 WL 3231630, at *5 (stating that although the Petitioner may be "an applicant for admission" he is "not 'seeking admission' because he has been [present] in the United States.") *see also, Alonso,* 2025 WL 3083920, at *5 (holding that even though "Alonso is thus an 'applicant for admission'" he is not 'seeking admission" and Section 1225(b)(2)(A) does not apply).

ii.  *Plain Language of Section 1225.*

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." Under § 1225(b)(2) any applicant for admission who "is not clearly and beyond a doubt entitled to be admitted" must be detained. Respondents take the position that "all unadmitted and uninspected aliens are 'applicants for admission,' regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." [DE 10 at 145]. As a result, the United States asserts the "[i]t therefore follows that an 'applicant for admission' and a person 'seeking admission' are one and the same."  [*Id.*]. Respondents' interpretation of § 1225(b)(2)(A), therefore, would call for mandatory detention of every noncitizen present in the United States who has not been lawfully admitted. This interpretation is much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

Respondents further contend that because Ramirez does "not contest his removability for being present in the United States without being admitted or paroled . . . the Court should treat him as an applicant for admission that is seeking admission" and therefore he is properly detained under § 1225(b)(2)(A). [DE 10 at 144].  But there is simply no logical way to interpret Ramirez as "arriving" or "seeking admission" as he has lived within the United States for the past twenty years. The Western District of Kentucky has continuously held that an individual who has been present in the United States for a lengthy period is not "seeking admission" as the United States contends. *See e.g., Martinez-Elvir*, 2025 WL 3006772, at *7 (holding that the term "seeking admission" does "not apply to noncitizens, such as Petitioner, who has lived in the United States for over twelve years"); *see also, Del Villar v. Noem,* 2025 WL 3231630, at *5 (W.D. Ky. Nov. 19, 2025) (holding that Petitioner "is not 'seeking' admission because he has been in the United States for more than 25 years.").

The United States' interpretation of Section 1225 ignores or simply reads out the word "seeking" in the phrase "seeking admission." Section 1225(b)(2)(A) states, "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (emphasis added). The term "seeking admission" is not defined in the statute. Seeking means "to go in search of" and is synonymous with "pursue." *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024). Other courts have stated that seeking "implies action." *Lopez-Campos,* 2025 WL 2496379, at *6.

Also, courts are instructed to presume that Congress would *not* add redundancy to statutes. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 574 (1995) ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.") And even if they did, Courts must give effect

to every word in the statute. *Corley v. United States*, 556 U.S. 303, 314 (2009). That is, courts must construe statutes as written even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). This is a 'cardinal principle' of statutory interpretation that *Rojas* disregards. *TRW Inc.*, 534 U.S. at 31 (2001) (quoting *Duncan*, 533 U.S. at 174). Reading the statute *as the United States* contends would either ignore the plain meaning of "seeking" (which implies a present tense action, *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024)) or, more simply, readout "seeking" directly from the statute. But this Court will not ignore words within a statute. This would be expressly against the "cardinal principal" of reading and interpreting every word in a statute. *Corley*, 556 U.S. at 314; *Villa v. Normand,* 2025 WL 3188406, at *7 (S.D. Ga. Nov. 14, 2025) (stating that the *Rojas* court erred in their decision because, for one reason, they "gave little attention to the meaning of the term 'seeking'"). And because "seeking admission" is not defined in the statute compared to other terms, such as "admission," it is this Courts' duty to interpret every word in the statute. *Corley*, 556 U.S. at 314.

This reading is further supported by the implementing regulations for Section 1225 set forth in 8 C.F.R. § 235, titled "Inspection of Persons Applying for Admission." 8 C.F.R. § 235.1, subtitled "Scope of examination" specifically states that

> (a) ***General.*** Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section.
> (b) ***U.S. Citizens.*** A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport or alternative documentation as required by 22 CFR part 53. If such applicant for admission fails to satisfy the examining immigration officer that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien. . .
> …
> (f) ***Alien applicants for admission.***
> (1) Each alien seeking admission at a United States port-of-entry must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations, and is entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States.

The regulations make clear that if any of the categories of individuals examined on arrival provide the appropriate documentations then they are either admitted and issued a "Form I-94 as evidence of the terms of admission," or "[a]ny alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I-94, endorsed with the parole stamp." 8 C.F.R. § 235.1(h)(1)-(2).

If, however, the individual does not present the appropriate documents for examination, and therefore is not admitted or paroled, then they are subject to expedited removal.

> (2) An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) of the Act and to removal under section 235(b) or 240 of the Act.

8 C.F.R. § 235.1(f)(2). Expedited Removal is set forth in 8 C.F.R. § 235.3, titled "Inadmissible aliens and expedited removal." This subsection specifically states that detention is appropriate prior to inspection on any vessel or aircraft that arrives in the United States and that expedited removal applies to any arriving alien and "[a]s specifically designated by the Commissioner, aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled *following inspection by an immigration officer at a designated port-of-entry*, and who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility." 8 C.F.R. § 235.3(a)-(b)(emphasis added). As such, the regulation makes clear that detention and expedited removal under Section 1225 is for arriving aliens or those who have not been "physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility." 8 C.F.R. § 235.3(b)(1)(ii).

### iii.  Plain Language of Section 1226

Section § 1226 as titled controls the "apprehension and detention of aliens." Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States." The plain language of Section 1226's implementing regulations are also insightful. 8 C.F.R. § 236.1(b) titled "Warrant of arrest" states that noncitizen "may be arrested and taken into custody under the authority of Form I-200." 8 C.F.R. § 236.1(b)(1). The plain meaning of the statute is applicable to Ramirez—an alien, who was arrested and detained by ICE pursuant to a Form I-200 and is currently pending removal proceedings. The Notice to Appear, issued by DHS, checked the box titled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien." [DE 1-1 at 93 (emphasis added)]. "This supports this Court's conclusion, and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez*, that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens. The Respondent's new post hoc position is simply 'impermissible.'" *Roman v. Olson,* No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *4 (E.D. Ky. Nov. 24, 2025) (citation omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations.")).

### iv.  Current Contrary Case Law

The United States cites to several nonbinding district courts, and one BIA decision, to support their interpretation.[7] However, the Court is not persuaded by these decisions for the

---

[7] None of cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. See Loper Bright Enter, 603 U.S. at 413 ("courts. . . may not defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

reasons previously explained in *Edahi*, 2025 WL 3466682, at *9–13, incorporated here by reference.[8][9][10]

The Eastern District of Missouri also found in favor of the United States as well in *Olalde v. Noem*, No. CV 25-168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025). In *Olalde*, the court held that Franciso Mejia Olalde ("Olalde"), who entered the United States in 1988, was properly detained pursuant to Section 1225(b)(2) because Olalde is an "applicant for admission." *Olalde*, 2025 WL 3131942 at *2. The court reframed the central question as not whether the individual must be seeking admission to be detained pursuant to Section 1225(b)(2), but whether being an "applicant for admission" is sufficient. *Id.* ("The question here is whether Mejia Olalde is an 'applicant for admission.' He is. That question is dispositive.")

*Olalde* first states that the "statute *defines* Mejia Olalde as seeking admission" because "Mejia Olalde is an alien, present in the United States, who has not been admitted, the law defines him to be an applicant for admission. He is thus seeking admission." *Olalde*, 2025 WL 3131942, at *3. But this reasoning is circular, and in contradiction to the statutory definitions found within 8 U.S.C. § 1101. "Admission" and "admitted" are defined as "the lawful entry of the alien into the

---

[8] The United States cites *Sandoval v. Acuna,* 2025 WL 3048926 (W.D. La. Oct. 31, 2025) in support of its argument. The *Sandoval* court held that the lack of allegation that the Attorney General issued a warrant indicates that "Petitioner is properly detained under [Section 1225] as an 'applicant for admission,' not [Section 1226]." 2025 WL 3048926, at *5. This is in factual contrast to Ramirez, who has been issued an arrest warrant and thus supports the allegation that he was detained pursuant to Section 1226, [DE 1-1 at 93], which explicitly states that detention under Section 1226 is proper "[o]n a warrant issued by the Attorney General. . ." Section 1226(a); 8 C.F.R. § 236.1(b)(1)

[9] *Rojas v. Olson,* 2025 WL 3033967, at *13-14 (E.D. Wis. Oct. 30, 2025) presents a different factual situation than Ramirez. Rojas concerned a noncitizen who is currently facing an automatic stay of custody pursuant to 8 C.F.R. § 1003.6(c)(1) & 1003.19(i)(2) ("In any case in which DHS has determined that an alien should not be released. . . [the noncitizen] shall remain in abeyance pending decision of the appeal by the Board."). Rojas, 2025 3033967, at *2. Here, Ramirez is challenging his overall detention as a violation of his due process rights, not an automatic stay pursuant to a federal regulation. [DE 1 at 2]. This distinction does not impact this Court's statutory analysis. But Rojas' due process analysis is inapplicable to Ramirez as it pertains to the *Matthews v. Eldridge*, 424 U.S. 319 (1976) factors described below because of this distinction. *See Rojas*, 2025 WL 3033967, at *10-14.

[10] Although not briefed by either Party, the Court is not persuaded by a recent decision in *Valencia v. Chestnut*, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025), for similar reasons already set forth in *Edahi*, 2025 WL 3466682, at *9–13.

United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Nowhere in the statutory scheme is "seeking admission" defined. If Congress wished to define "seeking admission" or "seeking" alone, it could have. Evidenced by the fact that Congress defined "admission" and "admitted" Congress knows how to define words with a specific legal definition if it wished to do so.

*Olalde* further states it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission." *Id.* at 3. Yet, to be detained pursuant to Section 1225(b)(2)(A), that is what the text requires. Detention is mandated "if the examining immigration officer determines that an alien *seeking admission is not clearly and beyond a doubt entitled to be admitted*, . . ." Section 1225(b)(2)(A) (emphasis added). Holding as *Olalde* does would require the Court to ignore the plain statutory text. But Courts must give effect to every word in the statute. *Corley*, 556 U.S. at 314. In ignoring the very words of Section 1225(b)(2)(A) *Olalde* defies this principle.

Similarly, *Olalde* states that "Congress knows how to limit the scope of the text geographically and temporally when it wants to." 2025 WL 3131942, at *4. *Olalde* references Section 1225(b)(1)(A) as it applies to a noncitizen "who is arriving in the United States" and compares it Section 1225(b)(2) which "has no similar language limiting applicability." First, the scope is already limited through the title as well as the fact that the action applies to "inspections by an immigration officer." Section 1225(b) is already limited by what has come before it. And here, Petitioner was neither being inspected by an immigration officer at the time of his detention, nor was he likely ever inspected. He was physically "turned over" to ICE custody from the custody of the Indianapolis Police Department. This occurred after ICE initiated a detainer with the Marion County Sheriff's Department on Ramirez after his initial arrest based upon the traffic violation. [DE 10 at 135].

19

Second, the plain text of Section 1225(b)(2)(A) states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission. . ." The limiting language is the verb "seeking" which limits the group of noncitizens to which it applies. Yet *Olalde* ignores this limiting phrase, going against the "cardinal principle of statutory construction" that every "clause and word . . . should have meaning." *Duncan*, 533 U.S. at 174; *United States, ex rel.*, 599 U.S. at 432.

Next, *Olalde* addresses the title of Section 1225. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Section 1225. *Olalde* states that the title suggests a broader view of Section 1225 because of the placement of the semicolons and that Section 1225(b)(2) only references the third subject. *Id.* at *3. The *Olalde* court does not explain why or how Section 1225(b)(2) is strictly limited to the third subject, "referral for hearing" and not "expedited removal of inadmissible arriving aliens." *See id.* at *3. While focusing on the syntax of the title of Section 1225, *Olalde* ignores the text of the title, which supports a narrower view of the statute. The Supreme Court has instructed that a "title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). The reference to "arriving" in the title, in conjuncture with the verb "seek," in "seeking admission" found in Section 1225(b)(2)(A) "reinforces what the text's [] [] verbs independently suggest." That is, the use of "arriving" and "seek" suggest a limited and narrow application of Section 1225, primarily to "arriving" noncitizens who are then "seeking" admission.  Further, here Petitioner was in the custody of the Indianapolis Police Department at the time of his detention. After his initial arrest by the Indianapolis Department, ICE placed a detainer upon Ramirez with the Marion County Sherrif Department. Then, Ramirez was "turned over to ICE" and provided with a Notice to Appear and an Arrest Warrant. [DE 10 at 135]. He was not "referred for a hearing" as the third phrase of the title states and *Olalde* asserts.

Lastly, *Olalde* states that it is possible to interpret the provisions as merely overlapping, and Congress often takes a "belt and suspenders approach" to legislation." 2025 WL 3131942, at *4. *Olalde* states in part that because Section 1226(c) "regulates not only *what* the Attorney General must do (take aliens into custody), but also *when*" that difference is enough to create a sufficient "belt and suspenders" approach rather than be superfluous. *Id.* But for the reasons described above, if the United States' interpretation prevails, the two provisions will be performing essentially the same function. Both provisions are governing the same group of noncitizens. And when Congress acts, "we presume it intends its amendment to have real and substantial effect." *Stone,* 514 U.S. at 397. Reading the Laken Riley Act as *Olalde* suggests is not simply a "belts and suspenders" approach, but would add redundancy, which the Supreme Court has instructed lower courts to avoid when possible. *Gustafson,* 513 U.S. at 574 ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.")

The Court recognizes that this issue "present[s] a complicated and debatable question." *Echevarria v. Bondi,* 2025 WL 2821282, at *5 (D. Ariz. Oct. 3, 2025). But still the plain language text and rules of statutory interpretation dictate the outcome. The Court views this reading as the best and most straightforward interpretation of Section 1225 and Section 1226 based on the text of the statute.

\* \* \*

For the reasons above, Ramirez, who has been present in the United States for approximately twenty years, is not "seeking admission" into the United States, a fact acknowledged in his notice for appearance by the checking of the box for "present" and not for "arriving." Section 1226, not Section 1225, applies to his detention.

### B.  Lawfulness of Current Detention[11]

As stated, Ramirez is detained under Section 1226. Thus, the Court must determine whether the continued detention is in violation of his Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does not address the merits of his Due Process claim, but instead focuses solely on the legal argument of Section 1225 versus Section 1226 as referenced above.

### i.  Private Interest

It is undisputed Ramirez has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Ramirez is being detained at Hopkins County Jail. [DE 1 at 1].

---

[11] As noted above, *Rojas* concerns the procedural due process of ICE's invocation of an automatic stay pursuant to 8 C.F.R. § 1003.6(c)(1) & 1003.19(i)(2). *Rojas*, 2025 3033967, at *2. Here, Ramirez claims a due process violation of his detention.

Ramirez retains primary physical custody of his three U.S. Citizen children. [*Id.* at 4]. But because of Ramirez's detention, he is currently separated from his them. [*Id.*]. Additionally, two of the children are minors, ages 7 and 10. [*Id.*]. The detention is imposing an "extreme hardship" on his children, and a "financial hardship" on the family at large. [*Id.*]. As a result, the first *Matthews* factor favors Ramirez's position.

      *ii.*    Risk of Error

The second factor concerns the risk of the erroneous deprivation of Ramirez's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Ramirez has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Ramirez is a flight risk or a danger to the community. In fact, Ramirez has a currently valid work visa provided by DHS. [DE 14]. He also recently had his VAWA self-petition approved, as discussed at the show cause hearing. [DE 7; DE 14]. And to be approved for the VAWA self-petition, the individual must be of "good moral character." 8 U.S.C. § 1154 (a)(vii)(II); 8 C.F.R. 204.2(c)(1)(i)(F). It would appear to the Court the only change within the past year, with respect to Ramirez, is the United States' novel interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Ramirez's liberty interest, the second *Matthews* factor favors Ramirez.

iii.    United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Ramirez.

Therefore, the Court finds that all three *Matthews* factors favor Ramirez. The current detention of Ramirez is in violation of the Due Process Clause and the INA.

## V.    Remedy

Lastly, even as this Court has found that Ramirez is detained pursuant to Section 1226, the United States asserts that he cannot then be released prior to his bond hearing. [DE 10 at 152].

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Ramirez because of the "unlawful detention" by ICE and the United States for the reasons stated above. Ramirez is not being released because he is detained pursuant to Section 1226, as the United States contends. But

instead, the Court is ordering his release because of the United States' illegal actions *it undertook* in Ramirez's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of his release stemming from the "unlawful detention" in violation of his due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ prior to any redetention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ may consider the non-exhaustive list of factors set out in *Matter of Guerra* 24 I. & N. 37, 40 (BIA 2006). Courts across the country have routinely held this procedure proper. *Alonso,* 2025 WL 3083920, at *9; *Lopez-Campos,* 2025 WL 2496379, at *9-10; *Mboup v. Field Office Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Ramirez's procedural due process rights are not violated by the very fact he is detained. "Rather, [Petitioner's rights] are violated because he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *11 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Ramirez is being detained pursuant to Section 1226, relevant regulations entitle him to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Ramirez

with the "full [due] process" under Section 1226, the United States must provide Ramirez with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

**VI.    Conclusion**

For the reasons stated above, the United States has violated Ramirez's due process rights. The Court **GRANTS** Ramirez's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

    I.    The United States is directed to release Petitioner Ramirez because of the unlawful detention in violation of his due process rights.

    II.    The United States must provide him with a bond hearing before a neutral IJ pursuant to Section 1226.

    III.    The United States must certify compliance with the Court's order by a filing on the docket **immediately.**

    IV.    Ramirez's motion for a temporary restraining order is **MOOT**. [DE 3].

Rebecca Grady Jennings, District Judge
United States District Court

December 11, 2025